## THORN *v.* BEAMON et al.

In the absence of any decisions of the courts of Texas establishing the interpretation to be put
upon the third paragraph of the tenth section of the general provisions of the constitution of
the Republic of Texas, which declares certain acts of the legislature of Coahuila and Texas,
and certain grants of land made under them, null and void, its operation cannot be extended,
by implication, to other grants than those expressly described.

APPEAL from the District Court of Rapides, *Campbell*, J.
*Hyams* and *Brent*, for the plaintiff. *Dunbar*, *Elgee*, *Prentiss*, and *Thomas*,
for the appellant.

The judgment of the court was pronounced by

EUSTIS, C. J. This suit was brought in September, 1837, by the plaintiff, a
citizen of the Republic of Texas, to recover a balance due on two promissory
notes, drawn by the defendants, in favor of *George Hancock*, or order. They
were given as part of the consideration of a sale made on the 15th of February,
1836, in New Orleans, by *Hancock* to the defendants, of three undivided eighths
of twenty-two leagues of land in Texas, which are, in the act of sale, declared
to be a part of the land acquired by the vendor from the plaintiff, on the 10th of
February, 1836. The defendants plead a total want of consideration to support
the notes; that *Frost Thorn* never had any title to the land, and that *Hancock*
had been imposed upon by him; that *Thorn* warranted the title to *Hancock*, and
*Hancock* to them; that the latter transferred to them his right of warranty
against *Thorn*; that these notes were transferred to the plaintiff, in payment of
the land; and that they have the same defence against him as they would have
were he their vendor, under the warranty before recited. There was judgment
for the plaintiff, and one of the defendants, *Jones*, has appealed.

The evidence relating to the transaction consists of the statement and
answers to interrogatories of *Hancock*, offered by the defendants, and the
answers of the plaintiff to interrogatories propounded by the defendants, which

were offered by the plaintiff. There is no bill of exceptions to any part of the evidence, except to a portion of the answers of the plaintiff. It appears that Hancock who resided in Louisville, Kentucky, early in the winter of 1835, was under the impression that, the then province of Texas would be purchased by the United States from the government of Mexico, and that thereby great profits could be realized by the purchase of lands in that province. He accordingly determined to visit the country, and, before leaving Louisiana, he was applied to by several persons to act as their agent, or to become their partner, in the purchase of lands; among these persons was *Carter Beamon*, one of the defendants. He met *Thorn*, the plaintiff, at Natchitoches, and the result of their acquaintance¹ was an agreement for the purchase of two tracts of land of eleven leagues each, situated between the Sabine and Lake Caddo, in Texas, which was concluded between the parties, and signed on the 24th of Dec. 1835. The price was fifty cents per acre. A formal deed was to be passed in sixty days from the date in New Orleans, provided *Hancock*, on investigation, should be satisfied with the title and quality of the lands. The completion of the sale was left optional during that period with *Hancock*, and in the event of *Hancock's* desiring to confirm it, *Thorn* was to warrant that the lands had been acquired in conformity with the laws of Coahuila and Texas, and that there were no charges on them in favor of the government or of individuals, and that the titles were genuine, and made by a commissioner duly authorized to make the same. *Thorn* was not to guaranty against any invasion or revolution. but only that the titles were genuine, and made according to law. The tracts are described as being grants of eleven leagues made to *John T. Mason*, by the government of Coahuila and Texas, and the titles as passed to *Thorn*, upon the archives of Nacogdoches. *Thorn* was to retain no mortgage on the lands, and payment was to be made in four annual instalments, from the date of the execution of the act of sale in New Orleans.

*Hancock* then proceeded to Texas from Natchitoches; employed counsel to examine the records and titles; and having satisfied himself in this respect, and as to the quality of the lands, returned to the United States with the determination to conclude the purchase, if he could find purchasers to unite with him. They were found, and the act of sale was passed before *Cenas*, a notary, in New Orleans, on the 15th of February, 1836, from the plaintiff to *Hancock*. *Thorn* having agreed to take the notes of the parties interested, with the endorsement of *Hancock*, acts of sale were passed from *Hancock* to them, and their notes transferred to the plaintiff in part payment of the price. *Beamon* appears to have been one of those who were in constant communication with *Hancock* in this transaction; but *Jones*, the appellant, became interested with *Beamon* just as the papers were being made out. The 10th of Feb. had been fixed to conclude the business; but one notary not being able to do the writing, another was resorted to. The acts are of different dates, but all had reference to the same transaction. The notes all bear date the 10th of February, though the act from *Thorn*, before *Cenas*, was not executed before the 15th, and none of them were transferred until all was completed.

On the 10th and 15th of February it was known among the parties, as well as by *Thorn*, who were to be interested. It was agreed among them that the sale should be made in *Hancock's* name, and that he should be entrusted to sell. The proceeds of the first sale were to be applied to the payment of the purchase notes, and the surplus, being the profits, were to be divided between *Hancock*

THORN
v.
BEAMON.

and the parties interested. A duplicate agreement of one of the parties is filed, dated the 10th Feb. 1836, and a similar agreement was entered into by the other parties, and by the defendants themselves. Afterwards we find that *Hancock* sold a part of their joint interest, under their instructions, viz : five leagues of the land, for which $11,365 68 was received by *Hancock*, and applied by him to the payment of the notes of the defendants held by *Thorn.* This sale was made to Messrs. *I. J. & W. Stuart*, of Kentucky, and to *J. Foreman.*

The principal ground of defence relied upon as establishing a want of title in the plaintiff, is one of the general provisions of the constitution of Texas, adopted in the convention held at Washington, on the 17th of March, 1836. This provision is affirmed in the constitution of the State of Texas, adopted in August, 1845, by this section :

" All claims, locations, surveys, grants and titles to land which are declared null and void by the convention of the republic of Texas, are, and the same shall remain forever, null and void."

The constitution of the republic of Texas thus provides :

" And whereas the protection of the public domain from unjust and fraudulent claims, and quieting the people in the enjoyment of their lands, is one of the great duties of this convention : And whereas the legislature of Coahuila and Texas having passed an act in the year 1834, in behalf of General *John T. Mason* of New York, and another on the 14th day of March, 1835, under which the enormous amount of eleven hundred leagues of land has been claimed by sundry individuals, some of whom reside in foreign countries, and are not citizens of the republic, which said acts are contrary to articles fourth, twelfth and fifteenth of the laws of 1824, of the general congress of Mexico, and one of said acts, for that cause has, by said general congress of Mexico, been declared null and void : It is hereby declared, that the said act of 1834, in favor of *John T. Mason*, and of the 14th of March, 1835, of the said legislature of Coahuila and Texas, and each and every grant founded thereon, is, and was from the beginning, null and void ; and all surveys made under pretence of authority derived from said acts, are hereby declared to be null and void ; and all eleven league claims, located within twenty leagues of the boundary line between Texas and the United States of America, which have been located contrary to the laws of Mexico, are hereby declared to be null and void : And whereas many surveys and titles to lands had been made whilst most of the people of Texas were absent from home, serving in the campaign against Bexar, it is hereby declared that all the surveys and locations of land made since the act of the late consultation closing the land offices, and all titles to land made since that time, are, and shall be, null and void."

In order to aid the defendants in the application of this act of high sovereignty to the present case, they have addressed interrogatories to the plaintiff concerning the title of the land and its location, as relative to what is commonly called the *J. T. Mason grant.* In answer, he says that, the titles were perfected by regularly authorized commissioners of the government; that the lands were purchased from General *J. T. Mason*, in 1834, or 1835, who was regularly authorized by the government of Coahuila and Texas to sell them. *Mason* was authorized to sell three hundred leagues, ninety-five of which were regularly located, and titles thereof were issued by the lawfully constituted authority ; of these lands, those sold to *Hancock* formed a part. These ninety-five leagues

form a part of the lands now generally designated as General *John T. Mason's claims.*\*

The provision of the convention of Texas purports to vacate two certain acts of the legislature of Coahuila and Texas, one of which is described to have been made in behalf of General *John T. Mason* ; the other has no reference to the present inquiry. It declares these acts to have been contrary to certain articles of the laws of 1824 of the general congress of Mexico, and one of them, for that cause, to have been declared null and void by said general congress, and that said acts, and each and every grant, and all surveys founded thereon, have been *ab initio* null and void.

Giving the full force and effect which the counsel for the defendants insist is to be attached to this provision, it cannot be held to operate on the title of the land sold by *Thorn* to *Hancock*, because there is no such act as that described in the provision shown ever to have been passed by the legislature of Coahuila and Texas, and the answers of the plaintiff show that the lands in question were held under no such title.

The convention of Texas undertook to declare null and void certain legislative acts, and the grants made under them. To extend this solemn act of supreme authority to other grants than those described, would be in violation of all principles of constitutional law, and all sound rules of judicial interpretation. Until such an operation be given to it by the courts of Texas, a foreign tribunal must limit it to the legal intendment of the provision.

All eleven league claims, located within twenty leagues of the boundary line between Texas and the United States, which have been located contrary to the laws of Mexico, are also declared to be null and void. The provision is for the future ; the claims are not declared to have been null and void from the beginning, as is declared of the grants under the legislative acts. It does not attempt to strike at the past ; and having been enacted subsequently to the sale from *Thorn*, were he a vendor under a full warranty of title, no responsibility could attach to him in consequence of it.

Without the assistance of judicial decisions, or of unquestioned official acts of the government, to guide us in our inquiries, we do not feel ourselves as possessing the means of determing on the invalidity of the titles of these lands, by reason of their being in violation of the laws of the republic of Mexico. The question involves that of the power of the state and general government over the public domain. The State exercised the power, though contested by the

---

\**Thorn*, in his answers to interrogatories, alluding to the provision in the constitution of the republic of Texas says: "He presumes it was intended to declare General *J. T. Mason's* claim null and void; but that declaration, were it even binding in law and equity, does not, in the opinion of this respondent, reach the lands sold by this respondent to *Hancock*, as respondent believes and is well informed that, "no act of the legislature of Coahuila and Texas, either of the year 1834, or of the 14 of March, 1835, was ever passed in favor of *John T. Mason*, or granting lands to him. This respondent further knows and is well informed that, there was an act of the said legisiature, authorizing the sale by the government of three hundred leagues of land, and that General *John T. Mason* was appointed agent of the government for their disposal, and that he did sell the same under that authority, and pay the government therefor, all which was confirmed by act of the legislature, and the titles of the land sold by this respondent to *Hancock*, formed a part of ninety-five leagues thereof, which was located, and the titles thereto extended and perfected, according to law; all which took place before the declaration of independence of the republic of Texas."

THORN
v.
BEAMON.

central government, and the revolution of 1836 prevented for ever a settlement of the question.

We therefore conclude that it is not shown that the titles and location of the lands were contrary to the laws of Mexico, and according to the answer of the plaintiff, which stands uncontradicted, we feel bound to hold that, the location was regularly made, and the titles issued from the lawfully constituted authority.

From what is said it necessarily follows that, there is nothing thus far before us which establishes the defence set up, of a failure of a consideration of the notes sued on. The defendants having put the plaintiff on his oath, and had the benefit of his answers in evidence, and, so far from relying on the naked stipulation of the acts of sale, having offered in evidence the full, well prepared, and candid statement of the transaction by *Hancock*, have put us in possession of the whole case, and we are satisfied that the verdict of the jury must stand. The affair was a speculation throughout, of which the defendants have had the benefit. It is not pretended that they have suffered any real eviction from the lands; and no falsification, or breach, of the warranty given by *Thorn*, is proved, which was not an absolute warranty of property, *but that the titles were genuine, and made and perfected in compliance with the forms and usages of acquiring titles in Texas.* We leave out of view the answer of *Thorn* as to the extent of his warranty, and form our opinion in relation to it from the acts of sale, and the evidence which the defendants have themselves connected with them.                                                *Judgment affirmed.*